**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GREGORY G. GREEN and VICTORIA D. GREEN, husband and wife,<br><br>     Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>     Defendant. | No. CV 08-311-TUC-CKJ<br>     CV 08-313-TUC-JMR<br><br><br><br><br>**ORDER** |
| SILVER STARR DE VARONA and JOHN ELBERT ERVIN, husband and wife,<br><br>     Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>     Defendant. | |

. . .

. . .

. . .

. . .

. . .

. . .

Pending before this Court are Defendant's Motion to Dismiss [Doc. #4][1], Plaintiffs' Motion to Amend Complaint [Doc. #11][2], and Plaintiffs' Motion to Conduct Early Discovery [Doc. #17]. For the reasons discussed below, Defendant's Motion to Dismiss is granted.

## I. MOTION TO DISMISS

*A. Factual Background*[3]

Plaintiffs' claims arise from allegedly negligent conduct of United States Forest Service employees while working to contain the "Bullock Fire," a wildfire which was discovered burning in the Coronado National Forest on May 21, 2002. The Bullock Fire ultimately burned approximately seventeen (17) days, and destroyed over thirty thousand acres.

Plaintiffs allege that at the outset of the Bullock Fire, the Forest Service identified boundaries for containment of the fire in its "Incident Objectives" posted for all fire-fighting employees to reference. Plaintiffs further allege that in setting the boundaries for containing the fire (the "Containment Area"), Defendant's employees intended to protect all of the private properties, businesses, and "Special Risk" areas including radio towers, observatories, and several other facilities located near or within the Coronado National Forest. Plaintiffs allege that there was no plan stated regarding protection of Plaintiff Green's twenty (20) acre

---

[1] An identical motion is pending in Case Number CV-08-313-TUC-JMR [Doc. #5] that was filed prior to this Court's consolidation order. This Order treats both pending motions for dismissal as one.

[2] An identical motion is pending in Case Number CV-08-313-TUC-JMR [Doc. #14] that was filed prior to this Court's consolidation order. This Order treats both pending motions to amend Plaintiffs' Complaint as one.

[3] Although not required by Ninth Circuit precedent, the factual background is derived from Plaintiffs' Complaint(s), and is taken as true for the purposes of the motion. *See McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir. 1988). Additionally, Defendant's motion accepts Plaintiffs' allegations as true for its purposes.

- 2 -

1  ranch, located in close proximity to the Containment Area.[4] Plaintiffs allege that Defendant's
2  employees negligently started a controlling fire to back-burn an area of the Coronado
3  National Forest in close proximity to Plaintiffs' properties, under extremely high risk, low
4  moisture and high wind conditions.[5] This controlling fire exceeded the Forest boundaries and
5  burned Plaintiffs' properties.

6        Plaintiffs allege that the subject back-burn was undertaken without any action to
7  protect Plaintiffs' properties. Moreover, Plaintiffs allege that Defendant's employees failed
8  to make any effort to protect Plaintiffs' properties from the controlling fire, despite Plaintiffs'
9  numerous telephone calls to Defendant's employees advising them of the ranch locations,
10 and the properties were clearly marked on maps. Plaintiffs further allege that they were not
11 warned of the risk to their property.

12 . . .
13 . . .
14 . . .
15 . . .
16 . . .
17 . . .
18 . . .

---

[4] Plaintiffs' Complaint does not allege a lack of plan vis-à-vis the De Varona property. The Court notes, however, that the De Varona property is apparently similarly situated to the Green's property and within close proximity to the Containment Area.

[5] In Plaintiffs' Motion to Amend Complaint, Plaintiffs alleged for the first time that the controlling fire may have been intentionally set for fuel reduction purposes rather than for suppression of the active Bullock fire. Pls.' Mot. to Amend Compl. at ¶¶ 6-7, 17 [Doc. #11]. Plaintiffs expanded these allegations at oral argument, asserting that the burn area at issue in this case was nowhere near the actual fire. The Court finds that there is no reliable evidence in the record to support such a contention. Defendant, on the other hand, attached an affidavit by Mr. Peter Gordon, the Acting Fire Staff Officer for the Coronado National Forest to both its Motion to Dismiss [Doc. #4] and Response to Plaintiffs' Motion to Amend their Complaint [Doc. #16], refuting Plaintiffs' assertions. Plaintiffs have failed to produce any admissible evidence in support of their allegations.

Relying on Arizona Revised Statute § 13-1706,[6] Plaintiffs allege that under Arizona State law, "had Defendant's employees been private persons under similar circumstances, they would be liable for the damages realized as a direct and proximate result of their setting a fire on one property which then burned another's property (which they did not intend to burn)." Compl. ¶ 9.

Plaintiffs further allege, that records and/or logs kept by Defendant's employees "reference other firefighter's advisements that [Plaintiffs' properties] were at risk of burning by the back-fire (set by Defendant's employees) and required protection." Compl. ¶ 10. Moreover, Plaintiffs allege that Defendant's employees refused and/or failed to aid in extinguishing the controlling fire and/or to protect Plaintiffs' property. Plaintiffs assert that

. . .

. . .

. . .

---

[6]A.R.S. § 13-1706(A) provides:
> It is unlawful for any person, without lawful authority, to intentionally, knowingly, recklessly or with criminal negligence to set or cause to be set on fire any wildland other than the person's own or to permit a fire that was set or caused to be set by the person to pass from the person's own grounds to the grounds of another person.

Section B of § 13-1706 delineates situations to which the above section does not apply as follows:
> 1. Open burning that is lawfully conducted in the course of agricultural operations;
> 2. Fire management operations that are conducted by a political subdivision;
> 3. Prescribed or controlled burns that are conducted with written authority from the state forester;
> 4. Lawful activities that are conducted pursuant to any rule, regulation or policy that is adopted by a state, tribal or federal agency;
> 5. In absence of a fire ban or other burn restrictions to a person on public lands, setting a fire for purposes of cooking or warming that does not spread sufficiently from its source to require action by a fire control agency.

A.R.S. § 13-1706(B).

- 4 -

1  Defendant's employees alleged failure would subject them to liability for failing to assist in
2  protecting Plaintiffs' property, if they were private citizens, pursuant to A.R.S. § 13-2404.[7]
3  Plaintiffs allege that, "were it not for the controlling fire negligently set by
4  Defendant's employee(s), and/or [Defendant's employees'] subsequent refusal/failure to
5  extinguish the controlling fire or otherwise protect the [Plaintiffs' properties] upon receipt
6  of notice of the risk posed by said back-burn fire, Plaintiffs' Propert[ies] would not have
7  burned, and Plaintiffs would not have incurred the substantial damage[]" to their Properties.
8  Compl. ¶ 12.

### B. *Standard of Review*

This matter is before the Court on Defendant's motion to dismiss the complaint for lack of subject matter jurisdiction. *See McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir. 1988) (stating "[t]he question whether the United States has waived its sovereign immunity against suits for damages is . . . a question of subject matter jurisdiction." *Id.* (citations omitted)). In "considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *Id.* (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4, 67 S.Ct. 1009, 1011 n.4, 91 L.Ed. 1209 (1947)). Further, in attacks on subject matter jurisdiction pursuant to Rule 12(b)(1), Plaintiffs bear "the burden of proof that jurisdiction does in fact exist." *Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). The Court need not consider unreliable evidence, and "no presumptive truthfulness attaches to plaintiff[s'] allegations." *Id.* Where the discretionary function exception to the Federal Tort Claims Act is implicated, the United States Supreme Court recognized, "[f]or a complaint to survive a motion to

---

[7] A.R.S. § 13-2404(A)(1) provides that a person commits the crime of refusing to assist in fire control, a class 1 misdemeanor, if "[u]pon a reasonable command by a person reasonably known to be a fireman, such person knowingly refuses to aid in extinguishing a fire or in protecting property at the scene of a fire."

- 5 -

dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *U.S. v. Gaubert*, 499 U.S. 315, 324-25, 111 S.Ct. 1267, 1274-75, 113 L.Ed.2d 335 (1991). Moreover, Plaintiffs have an "obligation to provide the 'grounds' of [their] 'entitlement to relief' requir[ing] more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, —, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007).

### C. Analysis
#### 1. The Federal Tort Claims Act

The Federal Tort Claims Act ("FTCA") confers exclusive jurisdiction upon district courts of civil actions on claims against the United States, for money damages. 28 U.S.C. § 1346(b)(1). The FTCA extends this jurisdiction to civil claims, as follows:

> [To all civil actions for damages] accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.* This grant of jurisdiction, however, is made "[s]ubject to the provisions of chapter 171 of this title." *Id.* Additionally, the FTCA includes "a number of exceptions to this broad waiver of sovereign immunity." *Berkovitz v. U.S.*, 486 U.S. 531, 535, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). If any of the exceptions apply, sovereign immunity is not waived and the Government cannot be held liable.

Section 2680 delineates the exceptions to Governmental liability including:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The second clause of this section defines the discretionary function exception and "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure

- 6 -

to suit by private individuals." *U.S. v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984). If a case involves "the permissible exercise of policy judgment," the Government is insulated from liability. *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959. As such, this Court would be divested of its subject matter jurisdiction.

In *Berkovitz,* the Supreme Court enunciated a two-part test governing the application of the discretionary function exception. *See Berkovitz*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531. The first part of the test requires that the challenged conduct is discretionary, meaning that "it must involve an element of judgment or choice." *Kelly v. U.S.*, 241 F.3d 755, 760 (9th Cir. 2001). The second prong requires that the judgment at issue must be "of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1954, 100 L.Ed.2d 531. The Supreme Court has interpreted the discretionary function exemption as a means to prevent judicial intervention and "second guessing" of agency decisions exercising their regulatory and policy making authority. *Varig Airlines*, 467 U.S. at 820, 104 S.Ct. at 2768.

### 2.  Firefighting by the United States Forest Service

The Ninth Circuit Court of Appeals and its lower courts widely recognize that the United States Forest Service's ("USFS") firefighting function falls within the discretionary function exemption of the FTCA. *See Kelly v. U.S.*, 241 F.3d 755 (9th Cir. 2001) (applying discretionary function exception of the FTCA to the USFS's "decision not to require its contract firefighting pilots to have crew resource management training." *Id.*); *Miller v. U.S.*, 163 F.3d 591 (9th Cir. 1998) (holding discretionary function exception applies to the USFS and its employees, barring claims for damages to property as a result of forest fire spreading from national forest to ranch); *Backfire 2000 v. U.S.*, 273 Fed.Appx. 661 (9th Cir. 2008) (holding discretionary function exception applies to the USFS's decision to set backfires while combating a wildfire); *Graves v. U.S.*, 2007 WL 776101 (E.D.Cal.) (holding USFS's decision to set a backfire on plaintiff's property fell under the discretionary function

exception, precluding liability pursuant to the FTCA); *Parsons v. U.S.*, 811 F.Supp. 1411 (E.D.Cal. 1992) (holding discretionary function exception applied to USFS employees' alleged negligence while fighting forest fire which destroyed 500 acres of plaintiff's timber); *Pope v. Talbot*, 782 F.Supp. 1460 (D.Or. 1991) (holding discretionary function exception applied to USFS's decision whether to close national forest prior to a human caused fire which ultimately burned out of control and damaged plaintiff's timber); *Thune v. U.S.* 872 F.Supp. 921 (D.Wy. 1995) (adopting Ninth Circuit reasoning that USFS firefighting function falls within the discretionary function exception to the FTCA).

Plaintiffs point to five (5) sections of the Forest Service Manual ("FSM") in support of their argument for liability.[8] The first section relied on by Plaintiff is FSM § 5103, entitled "Policy."[9] Section 5103 states:

> 1.  Integrate consideration of fire management into Forest land and resource management plan (Forest plan) objectives, prescriptions, and practices.  When developing fire management direction in the forest plan, identify the foreseeable effects of fire on environmental, social, and economic conditions and outputs.  Identify a range of protection levels and fire use alternatives.  Estimate the economic and social effects based on analysis that incorporates consideration of commodity, non-commodity, and social values.
>
> 2.  Develop a fire management plan based on direction in land and resource management plans and interagency plans and assessments.  Amend Forest plans where necessary to meet fire management objectives.  Use the best available science to assess and plan on a landscape scale, across agency boundaries.
>
> 3.  Conduct fire management planning, preparedness, suppression, monitoring and research, and fire use on an interagency basis and involve affected partners.  Integrate with forest planning whenever possible.
>
> 4.  Observe these fire management priorities on all fires: first, ensure firefighter and public safety; and, second, protect property and natural and cultural resources based on the relative values to be protected.

---

[8]As Defendant points out in its reply, the sections that Plaintiffs rely upon are from a more recent FSM version than was in effect in 2002 when the Bullock Fire occurred. Defendant's attached the relevant sections of the FSM in use in May 2002 to their Reply. The Court limits its discussion to those sections properly in effect in May 2002.

[9]Plaintiffs cite in their response to FSM § 5103.1(8) entitled "Planning" under the section heading "Policies for Wildland Fire Management." As noted previously, Plaintiffs' version did not take effect until 2005 and is inapplicable here.

    5.    Designate a prescribed fire, or a wildland fire managed for resource benefits, as a wildfire, when it exceeds, or is anticipated to exceed, one or more prescription parameters. Once a fire has been declared a wildfire, it may not be redesignated either as a prescribed fire or as a wildland fire managed for resource benefits.

    6.    Do not manage human-caused wildland fires to achieve resource benefits.

Plaintiffs also rely on FSM § 5106.2(1) which states:

Document Forest Service wildland fire protection and suppression assistance in cooperative agreements within the limits articulated in FSH 1509.11 and FSM chapters 1580, 3170 and 5130, specifically those limits set in FSM 5132, Suppression Action on Private Lands and FSM 5137, Structure Fires.[10]

Third, Plaintiffs point to FSM § 5142.2 entitled "Final Determination" regarding prescribed burns[11] which states:

Make the final complexity determination based on the Prescribed Fire Burn Plan (RxBP). Resources assigned, tactics, and strategy identified in the RxBP may result in mitigation of risk elements and a final complexity rating that is below the complexity level identified in the initial determination.

    a.    Review prescribed fire objectives outlined in the RxBP.

    b.    Develop a prescribed fire prescription and test it against prescribed fire objectives using the best technology available at the local level.

    c.    Develop remaining RxBP elements (FSM 5142.21).

Finally, Plaintiffs point to FSM § 5130.3 entitled "Policy" within the chapter encompassing "Wildland Fire Suppression." Section 5130.3 states:

    1.    Line Officers are expected to ensure that suppression planning, operations, and personnel comply with Service-wide wildfire suppression principles and practices are set out in the Fireline Handbook, FSH 5109.32a,

---

[10] Section 5106.2, entitled "Policy" begins by stating:
    The Forest Service does not assume responsibility for fire protection or suppression on wildland/urban interface lands that are under the legal jurisdiction of another entity (State, Tribal, County, or local government, or property owner), unless a State, County, or local government entity assumes the lead responsibility for structural fire protection.

[11] The FSM § 5105 defines a "prescribed fire" as "[a]ny fire ignited by management actions to meet specific objectives. A written, approved prescribed fire plan must exist and NEPA requirements must be met, prior to ignition." The Court notes that this section distinguishes "prescribed fires" from "wildland fires" and "human-caused wildland fires."

- 9 -

the Firefighters Guide (FSM 5180), and the Health and Safety Handbook, FSH 6709.11.

2.      Responsible officials shall conduct fire suppression in a timely, effective, and efficient manner, giving the first priority to firefighter and public safety.

3.      In making decisions about how to organize and conduct suppression operations (suppression strategies), line officers shall minimize both suppression cost and resource loss consistent with the resource management objectives for the values to be protected.  Consider fire behavior, the availability of suppression resources, the values of natural resources and property at risk, direction in the land and resource management plan, and the potential cost of suppression.  Use a Wildland Fire Situation Analysis to document suppression strategy decisions (FSM 5131.1).

4.      Units are to conduct a cost-effective initial attack on any human caused ignition.

5.      Unit are to respond to each reported wildfire with planned forces and tactics as directed in the fire management plan (FSM 5110, 5140).

6.      All employees are expected to promptly report wildfires to the nearest unit.  Employees who discover wildland fire are expected to take initial action consistent with their wildland fire qualifications. Employees without wildland fire qualifications are not expected to take initial action.

Every Forest Service employee has a responsibility to support and participate in wildfire suppression activities as the situation demands.  Wildfire suppression is not limited to those employees with skills in wildland fire operations; rather, it requires the skills of employees in fiscal, human resources, telecommunications, communications, and other areas. Employees who are not sent to provide direct support of a suppression action are expected to fill in as directed to ensure that critical work at the home unit is performed in the absence of other employees who are deployed to provide direct support in wildfire emergencies.

7.      Line Officers shall notify the National Interagency Fire Center within 24 hours of any fire entrapment. Entrapments are situations where personnel are unexpectedly caught in a fire-behavior-related, life-threatening position where planned escape routes or safety zones are absent, inadequate, or compromised. An entrapment may or may not include deployment of a fire shelter for its intended purpose. These situations may or may not result in injury; they include near misses (NWCG, NFES 1832, PMS 205, November, 1996).  The responsible line officer shall investigate all fire entrapments promptly and throughly.  Forward a copy of the investigative report and the corrective action plan to the Director of Fire and Aviation Management, Washington Office, within 10 days of receipt of the investigative report.

### *a. The design and implementation of a Fire Management Plan involves judgment and choice.*

Plaintiffs concede that the design and implementation of a Fire Management Plan involves judgment on the part of USFS employees. "In examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for

1 the acting employee." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958. Nothing in the FSM
2 sections cited by Plaintiffs would indicate otherwise.

3        The Ninth Circuit Court of Appeals recognizes that although "standards and
4 procedures outline certain requirements for fire suppression, they do not eliminate discretion
5 because they do not tell firefighters how to fight the fire." *Miller v. U.S.*, 163 F.3d 591, 595
6 (9th Cir. 1998). General regulations or policies do "not remove discretion unless [they]
7 specifically prescribe[] a course of conduct." *Kelly v. U.S.*, 241 F.3d 755, 761 (9th Cir. 2001).
8 Here, Plaintiffs point to general policies and regulations of the USFS. Moreover, as counsel
9 for the Government explained, Chapter 5130 of the FSM pertains to wildland fire fighting
10 activity, whereas Chapter 5140 relates to prescribed burns, i.e., those set for reduction of fuel
11 for forest maintenance purposes. None of the sections discussed above provide specific,
12 mandatory conduct on the part of USFS employees while fighting wildfires like the Bullock
13 Fire. Plaintiffs stress that the presence of the word "shall" makes the sections mandatory.[12]
14 This argument misses the point. Although there may be certain activities that firefighters are
15 required to perform, nothing in these policies specifies exactly how the firefighters must fight
16 a fire. Indeed, they cannot because such an activity requires the balancing of multiple policy
17 considerations. As such, they are precisely the types of action that require judgment and
18 choice.

19 . . .
20 . . .
21 . . .

---

[12]*See, e.g.,* Section 5130.3(2) stating:
> Responsible officials *shall* conduct fire suppression in a timely, effective, and efficient manner, giving the first priority to firefighter and public safety.

FSM § 5130.3(2) (emphasis added). Although this section contains the word "shall," it cannot be construed as mandating a specific behavior. Effective behavior in one fire circumstance will not necessarily be the same in another.

- 11 -

###### b. The design and implementation of a Fire Management Plan is the kind of conduct or judgment the discretionary function exception was designed to shield.

The second prong of *Berkovitz* requires this Court to consider whether the judgment at issue must be "of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1954. The Ninth Circuit consistently recognizes that the USFS's actions in fighting wildfires reflect "the type of economic, social and political concerns that the discretionary function exception is designed to protect."[13] *Miller*, 163 F.3d at 595. The FSM provisions cited to by Plaintiffs make clear the competing policy considerations that must be balanced by USFS employees. These include, but are not limited to, human and economic costs, availability of resources, public safety, and firefighter safety. As such, the actions of the USFS and its employees fall within the discretionary function exception, and are immune from liability.

### 3. Failure to Communicate/Warn

Plaintiffs also assert that the USFS employees' failure to communicate with them and warn them of the potential spread of the wildfire resulted in damage to their properties. In so far as Plaintiffs are asserting negligence on the part of the USFS, any such claims are barred. "[N]egligence is simply irrelevant to the discretionary function inquiry." *Kennewick v. U.S.*, 880 F.2d 1018, 1029 (9th Cir. 1989). The discretionary function exception applies irrespective of "whether or not the discretion involved was abused." *Id.*

This Court finds the Eastern District of California's decision in *Graves v. U.S.* instructive. 2007 WL 776101 (E.D.Cal.). *Graves* involved the Canon Fire wildfire occurring in June 2002. *Id.* at 1. The Incident Commander decided to light a burnout in an effort to

---

[13]Plaintiffs cite *Anderson v. U.S.*, 55 F.3d 1379 (9th Cir. 1995) to extend liability to Defendants. There, the Ninth Circuit Court of Appeals held the USFS liable for damages to plaintiff's property when an intentionally initiated fire spread out of control onto private property. In *Miller*, the Ninth Circuit distinguished *Anderson* because the government did not raise the discretionary function exception. *Miller*, 163 F.3d at 597 n.2. Similarly, the Court finds that *Anderson* is inapposite to this case.

- 12 -

1  protect plaintiff's home from the advancing wildfire. *Id.* As a result, plaintiff alleged that
2  the burning of her property was unnecessary and "that the government employee who
3  reported the facts to the command center either intentionally made false representations or
4  made representations with no possible belief that they were true." *Id.* (internal quotations
5  omitted). The court rejected plaintiff's claims holding that the discretionary function
6  exception applied "to defendant's actions [and] . . . arguments and evidence relating to
7  alleged misinformation and negligence [were] irrelevant. *Id.* at 7.

8  Similarly, the district court for the District of Wyoming recognized the USFS's
9  immunity pursuant to the discretionary function exception where the plaintiff was given
10  insufficient warning about a controlled burn endangering his base camp. *Thune v. U.S.*, 872
11  F.Supp. 921 (D.Wy. 1995). In *Thune*, the USFS set a controlled burn in the Bridger-Teton
12  National Forest. *Id.* at 922. The burn grew out of control and was designated a wildfire. *Id.*
13  Plaintiff was a guide for game hunters and maintained "a base camp where he stored most
14  of his hunting equipment." *Id.* at 923. Once he was notified of the approaching fire, he only
15  had time to escape with his pack horses and some equipment, his camp and much of his gear
16  was destroyed by the fire. *Id.* In his complaint against the USFS, Plaintiff alleged
17  negligence and a failure to warn in time for him to evacuate all of his equipment. *Thune*, 872
18  at 924. The court noted that USFS officials "used their judgment on when to give the
19  plaintiff a final notice that he had to leave the area." *Id.* Furthermore, "[a]s the protector of
20  public lands the federal government and agents of the United States are entrusted with many
21  discretionary decisions and these actions should not be hampered by hindsight judgments by
22  judges and juries." *Id.* (citations omitted).

23  Here, Plaintiffs cannot meet their burden to establish subject matter jurisdiction. They
24  have failed to adduce any admissible evidence which would suggest that the discretionary
25  function exception should not apply. Moreover, alleged negligence by Defendant can play
26  no role in this analysis. Plaintiffs have not alleged any facts "which would support a finding
27  that the challenged actions are not the kind of conduct that can be said to be grounded in the
28  policy of the regulatory regime." *U.S. v. Gaubert*, 499 U.S. 315, 324-25, 111 S.Ct. 1267,

1274-75, 113 L.Ed.2d 335 (1991). As such, this Court finds that the discretionary function exception of the FTCA applies, and Defendant is immune from liability. Accordingly, Defendant's Motion to Dismiss [Doc. #4 and CV-08-313-TUC-JMR Doc. #5] is GRANTED.

## II. MOTION TO AMEND COMPLAINT

Defendant has not filed its first responsive pleading, only its Motion to Dismiss [Doc. #4 and CV-08-313-TUC-JMR Doc. #5] in this matter. Plaintiffs do not need to seek leave of Court to amend their Complaint. Fed. R. Civ. P. 12. Regardless, there is nothing in the Motion to Amend that would change the discretionary function exception analysis. Moreover, Plaintiffs rely on unreliable hearsay to bolster their claims that USFS Incident Commanders admitted to setting fuel reduction fires. Even if these allegations are true, Section 2680(a) and *Kennewick* make clear, abuse of the policies does not mean that the discretionary function exception ceases to apply. Because Defendant is immune from suit, Plaintiffs' Motion to Amend Complaint is moot. Accordingly, Plaintiffs' Motion to Amend Complaint [Doc. #11 and CV-08-313-TUC-JMR Doc. #14] is DENIED AS MOOT.

## III. MOTION TO CONDUCT EARLY DISCOVERY

Plaintiffs have also filed a Motion to Conduct Early Discovery [Doc. #17] pursuant to Rule 56(f), Federal Rules of Civil Procedure. Defendant has not waived its sovereign immunity, as such discovery is improper. Plaintiffs' Motion to Conduct Early Discovery [Doc. #17] is DENIED AS MOOT.

Accordingly, IT IS HEREBY ORDERED:

1. Defendants' Motion to Dismiss [Doc. #4 and CV-08-313-TUC-JMR Doc. #5] is GRANTED;

2. This cause of action is DISMISSED WITH PREJUDICE;

3. Plaintiffs' Motion to Amend Complaint [Doc. #11 and CV-08-313-TUC-JMR Doc. #14] is DENIED AS MOOT;

4. Plaintiffs' Motion to Conduct Early Discovery [Doc. #17] is DENIED AS MOOT; and

5. The Clerk of the Court is directed to enter judgment in this matter and close its file.

DATED this 31st day of March, 2009.

_____
Cindy K. Jorgenson
United States District Judge