1
2
3
4
5
6                          IN THE UNITED STATES DISTRICT COURT
7                              FOR THE DISTRICT OF ARIZONA
8
9   Gregory G. Green and Victoria D. Green,        No. CV-08-00311-TUC-CKJ
    husband and wife,,                                    (Lead Case)
10
                              Plaintiffs,             No. CV-08-00313-TUC-JMR
11
    v.
12
    United States of America,                      **ORDER**
13
                              Defendant.
14  Silver Starr De Varona and John Elbert
    Ervin, husband and wife,
15
                              Plaintiffs,
16
    v.
17
    United States of America,
18
                              Defendant.
19

20          Pending before this Court is Defendant's Motion for Summary Judgment.  (Doc.

21   86).  A response and reply have been filed.

22

23   I.      *Factual Background[1]*

24          This case arises from the efforts of the United States Forest Service's ("Forest

25   Service") efforts to combat a wildfire within the Santa Catalina Mountains.  Plaintiffs

26   Gregory Green and Victoria Green ("Green") and Plaintiffs Silver Starr De Varona and

27   _____

28          [1] The factual background consists of the undisputed facts, except where otherwise
     noted.

1    John Elbert Ervin ("De Varona")(collectively "Plaintiffs"), own separate parcels of

2    property located within the Santa Catalina Mountains.[2] (Doc. 91; Plaintiffs' Additional

3    Statement of Facts at ¶25)("PSOF").

4         On May 21, 2002, a wildfire was discovered burning on the back side of the Santa

5    Catalina Mountains, ("Bullock Fire").  (Doc. 87; Defendant's Separate Statement of Facts

6    at ¶1)("DSOF").  Fire crews experienced significant problems in controlling the Bullock

7    Fire due to the fire's extreme behavior, drought conditions, and inaccessible terrain.  *Id*.

8    By May 26, 2002, the Bullock Fire grew to encompass approximately 14,500 acres.  *Id*.

9    A mandatory evacuation of the residences and businesses in the Mt. Lemmon area was

10   completed by May 26, 2002.  *Id*.  On May 28, 2002, road access to Mt. Lemmon was

11   closed.[3] *Id*. at ¶5.  However, private property owners and residents of lands within the

12   boundaries of the Coronado National Forest were exempt from the road closures.  *See*

13   (Forest Service Closure Order as Exhibit 1 to Doc. 96).

14        The geographic responsibility for fighting the Bullock Fire was divided into

15   alphabetical divisions.  *Id*. at ¶7.  Division Q was the firefighting division responsible for

16   the control lines[4] near the Plaintiffs' properties.[5]  *Id*. at ¶¶6, 8.  Toby Richards was the

17   supervisor of Division Q.  *Id*. at ¶10.  Control lines were constructed along the top of Mt.

18   Lemmon at the southwest flank and along Oracle Ridge, northeast to Marble Peak then

19   down to the Oracle Mine.  *Id*. at ¶¶3-4.  Mine Haul Road served as the control line further

---

[2] Plaintiff Gregory Green testified at his deposition that he is no longer the owner of the property at issue.  (Doc. 86)

[3] Defendant contends in its Statement of Facts that road access was closed by the Pima County Sheriff's Office on May 27, 2002.  However, in the press release referenced as support for this assertion, it states that the road closure began on May 28, 2002.  (Doc. 88-9).  Further, the press release seems to indicate that the decision to close the roadways was made by the Defendant.  *Id*.

[4] A "control line" is an inclusive term for all constructed or natural barriers and treated fire edges used to control a fire.  *See* http://www.nwcg.gov/pms/pubs/glossary /c.htm.

[5] Plaintiffs' properties are located to the north of Mine Haul Road.  (DSOF at ¶6).

east towards San Manual. [6]  *Id.* at ¶4.  From May 29 through May 31, 2002, Division Q constructed hose lays and performed preparation work around the mine and dozer-constructed control line.  *Id.* at ¶16.  This work was completed the afternoon of May 31, 2002.  *Id.*

According to Toby Richards, fire personnel scouted the area north of the control line within division Q and located a green roofed house and the Greens' property. [7]  *Id.* at ¶11.  The fire personnel found the green-roofed house defensible with minimal preparation work. [8]  *Id.* at ¶11.  However, fire personnel found the Greens' property indefensible because of mine shafts in and around the area and excess vegetation. [9]  *Id.* at ¶11.  Plaintiff Gregory Green contests that his property was indefensible due to the amount of vegetation and burnable material in the area.  He asserts that prior to the fire, he had taken measures to reduce the risk of fire damage to his structures including removing fire susceptible groundcover and dead branches.  (PSOF at ¶42).

On June 1, 2002, the fire personnel burned the control line from Division P into Division Q, ("backfire"). [10]  (DSOF at ¶18).  On the afternoon of June 1, 2002, either the

---

[6] Division Q had to use a bulldozer to straighten out the control line because Mine Haul Road had several switchbacks.  (DSOF at ¶17).

[7] The Greens' property is referred to as the Lone Wolf property in Mr. Richards' unit log.  (DSOF at ¶11).  This property is also referred to by its former mining claim name, "the Cochise."  (DSOF at ¶14).

[8] The green-roofed house refers to a parcel of property owned by the Bowens, a non-party to this action.  (DSOF at ¶12).  The Bowens' property had once been part of the De Varona's property but was sold to the Bowens prior to the Bullock Fire.  (DSOF at ¶12).  It was contingent with both the De Varona's property and the Greens' property. (DSOF at ¶15).  The Bowens' house survived the fire.  (DSOF at ¶13).

[9] Mr. Richards' unit log, which was prepared at or around May 28 to June 1, 2002, only indicates that the Greens' property was indefensible and dangerous because of mine shafts in and around the area.  (Doc. 88-1, Doc. 88-8, p. 31).  At his deposition on April 12, 2012, Mr. Richards' advised that the Greens' property was indefensible because of the amount of vegetation and burnable material in the area in addition to the safety hazard of the mine shafts.  (Doc. 88-8, p. 33).

[10] A "Backfire" is a fire set along the inner edge of a fire line to consume the fuel in the path of a wildfire or change the direction of force of the fire's convection column. *Green v. United States*, 630 F.3d 1245, 1247, n.1 (9th Cir. 2011) citing http://www.nwcg.gov/pms/pubs/glossary/information.htm.

1
2
3

Bullock Fire breached the control line and burned the Plaintiffs' properties or the Defendant lost control of the intentionally lit backfire, which burned the Plaintiffs' properties.[11]  (DSOF at ¶18; PSOF at ¶¶2, 9, and 18).

4
5

On June 4, 2002, Toby Richards was advised for the first time about the De Varona's property.  (DSOF at ¶19).  In his June 4, 2002 unit log, Mr. Richards noted:

6
7

> Roy Hall advised me of Star Place[12] … I scouted area, all structures destroyed.  I was not aware of the Star Place.  We did not attempt to defend.  (Doc. 88-1).

8
9
10
11
12
13
14
15

However, during his deposition ten years later, Mr. Richards explained that on June 4, 2002, when he attempted to drive down the road to the De Varona's property, he observed that it was overgrown with vegetation and he was unable to drive a truck through the area. (DSOF at ¶19).  Mr. Richard's explained that since he was not aware of the property he never attempted to defend it.  However, due to the excess vegetation he observed after the fire, he concluded that the property was indefensible.  Thus, even if he knew about the property, he would not have sent fire personnel into the property to defend it.  (DSOF at ¶20).

16
17
18
19
20
21

Plaintiff De Varona testified during her deposition that she had a highly vegetated dense thick property.  (DSOF at ¶21).  However, she always pruned the roads for vehicles and trucks to pass.  (PSOF at ¶61).  In her affidavit, she explained that on June 4, 2002, after the fire was extinguished, she drove to her property with Toby Richards and the roads were not covered with overgrown vegetation and were easily passable.[13]  (Doc. 91-

22
23
24
25

[11] Plaintiffs contend that the Defendant lost control of its intentionally lit Backfire, which burned the Plaintiffs' properties.  (PSOF at ¶¶2, 9, and 18).  Defendant contends that the Bullock Fire breached the control line in Division Q and burned Plaintiffs' properties.  (DSOF at ¶18).  Defendant contends that this issue of fact is immaterial to its Motion.  (Doc. 86).

26
27

[12] Mr. Richards explained in his deposition that his reference to the "Star Place" in his unit log, referred to the property owned by Plaintiff Silver Starr De Varona.  (Doc. 88-8 at p. 41).

28

[13] Plaintiff's Controverting Statement of Facts alludes to the existence of photographic evidence of the road's condition, however, Plaintiffs did not include any photographs as exhibits with their Response.  (PSOF at ¶60).

5).

*II.     Summary Judgment Legal Standard*

Summary judgment may be granted if the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Federal Rules of Civil Procedure.  The moving party has the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "set forth specific facts showing that there is a genuine [material] issue for trial." *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510, internal quotes omitted. The nonmoving party must demonstrate a dispute "over facts that might affect the outcome of the suit under the governing law" to preclude entry of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  Further, the disputed facts must be material. *Celotex Corp.*, 477 U.S. at 322-23.   In opposing summary judgment, a plaintiff is not entitled to rely on the allegations of her complaint, Fed.R.Civ.P. 56(e), or upon conclusory allegations in affidavits. *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992).  Further, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda."  *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

The dispute over material facts must be genuine.  *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  A party opposing a properly supported summary judgment motion must set forth specific facts demonstrating

a genuine issue for trial. *Id.* Mere allegation and speculation are not sufficient to create a factual dispute for purposes of summary judgment. *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (per curiam). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511. However, the evidence of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255. Further, in seeking to establish the existence of a factual dispute, the non-moving party need not establish a material issue of fact conclusively in his favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d 626, 631 (9th Cir. 1987).

Additionally, the Court is only to consider admissible evidence. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006) (pleading and opposition must be verified to constitute opposing affidavits); *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991) (declarations and other evidence that would not be admissible may be stricken).

III.   *Procedural Background*

On May 19, 2008 Gregory D. Green and Victoria D. Green filed one complaint under case number 08-CV-311, (Doc. 1), and Silver Starr De Varona and John Elbert Ervin filed a separate complaint under case number 08-CV-313. (Doc. 1).

On July 21, 2008, Defendant filed a Motion to Dismiss Plaintiff's Complaint. (Doc. 4). Subsequently, these cases were consolidated and Plaintiffs filed their First Amended Complaint on October 9, 2008.[14] (Doc. 12). Plaintiffs brought their claims under the Federal Tort Claims Act, 28 U.S.C. §1346(b), seeking damages resulting from the destruction of their properties. *Id.* Specifically, the Plaintiffs alleged that the

---

[14] Plaintiffs' initially filed a Motion to Amend Complaint on October 9, 2008 (Doc. 11) and lodged their proposed First Amended Complaint. (Doc. 12). However, since Defendant had filed a motion to dismiss in lieu of a responsive pleading, Plaintiffs were permitted to file their First Amended Complaint without leave of court once as a matter of course. *See* Fed.R.Civ.P. 15(a)(prior to 2009 amendment).

- 6 -

Defendant was negligent when it lost control of its intentionally lit backfire, which allegedly destroyed the Plaintiffs' properties.   Plaintiffs' further alleged that the Defendant failed to become aware of the Plaintiffs' properties, failed to warn the Plaintiffs about the risk posed to their properties as a result of the decision to ignite the backfire, failed to advise fire crews about the Plaintiffs' properties and the structures therein, and failed to defend the structures on the Plaintiffs' properties.  (Doc. 12).  Plaintiffs argued that the discretionary function exception did not apply because the backfire was started without following the Defendant's mandated requirements, including among others, Defendant's mandated requirement to complete a Wildland/Urban Interface Map.  (Doc. 12).

In this Court's March 31, 2009 Order granting Defendant's Motion to Dismiss, this Court held that the discretionary function exception to the Federal Tort Claims Act immunized the Defendant from the Plaintiffs' lawsuit.  (Doc. 22).  Specifically, this Court held that the manner in which the Forest Service fought the Bullock Fire including the decision to ignite the backfire, involved elements of judgment and choice, which was the kind of judgment the discretionary function exception was designed to shield.  (Doc. 22).  This Court also found that Plaintiffs' allegations regarding the failure to warn Plaintiffs' about the spread of the Bullock Fire and the lighting of the backfire, was an assertion of negligence on the part of the Defendant and was thus barred by the discretionary function exception.  (Doc. 22) citing *Kennewick v. United States,* 880 F.3d 1018, 1029 (9th Cir. 1989)("negligence is simply irrelevant to the discretionary function inquiry.").

Plaintiffs thereafter appealed this Court's Order dismissing their claims to the Ninth Circuit Court of Appeals.  On March 22, 2011, the Ninth Circuit Court of Appeals issued its Mandate reversing this Court's dismissal of Plaintiffs' claim and remanding for further proceedings.  *Green v. United States,* 630 F.3d 1245, 1252 (9th Cir. 2011).  Defendant subsequently filed an Answer to Plaintiff's Amended Complaint on June 3, 2011. (Doc. 33).   Then, on December 6, 2012, Defendant filed its Motion for

1    Summary Judgment.  (Doc. 86).  Plaintiffs filed their Response on January 10, 2013.

2    (Doc. 90).  Defendant filed its Reply on January 28, 2013.  (Doc. 96).

3

4    IV.    Analysis

5        Defendant argues that pursuant to the Ninth Circuit's Mandate, only the Plaintiffs'

6    failure to warn claim was remanded to the district court.   Plaintiffs argue that after this

7    case was remanded to the district court, all of the claims in their First Amended

8    Complaint survive against the Defendant.  The Court agrees with the Defendant.[15]

9        The Ninth Circuit summarized Plaintiffs' claims as the Defendant's failure to

10   notify the Plaintiffs about the backfire, the Defendant's failure to inform firefighters

11   about the Plaintiffs' properties and the Defendant's failure to protect the Plaintiffs;

12   properties.  See Green, 630 F.3d at 1250.  The Ninth Circuit explained that the Plaintiffs

13   are not challenging the Defendant's decision to light the backfire.  Id.  They are only

14   challenging the Defendant's actions surrounding the decision to light the backfire.  Id.

15   The Ninth Circuit then analyzed whether those decisions were subject to the discretionary

16   function exception to the Federal Tort Claims Act.

17       The Federal Tort Claims Act waives the federal government's sovereign immunity

18   for tort claims arising out of the negligent conduct of government employees and

19   agencies.  Berkovitz v. U.S., 486 U.S. 531, 535, 108 S.Ct. 1958, 1959 (1988).  There are

20   however a number of "exceptions to this broad waiver of sovereign immunity."  Id.  The

21   discretionary function exception shields the Government from liability if its activities

22   involved the permissible exercise of policy judgment.  Id. at 537.

23       The Supreme Court created a two-step test governing the application of the

24   discretionary function exception.  Terbush v. U.S., 516 F.3d 1125, 1129 (9th Cir. 2008).

25   _____

26   [15] The Ninth Circuit's intention to limit its opinion to the Defendant's alleged
     failure to warn the Plaintiffs is expressed in the first line of its opinion, "[t]his case
27   presents the question whether statutory qualified immunity protects the U.S. Forest
     Service's … failure to notify nearby private property owners that it intended to light a
28   'backfire' to fight a wildfire and its failure to notify property owners that the backfire
     exceeded Forest Service boundaries near their private properties."  Green, 630 F.3d at,
     1247.

1    The first step is to "determine whether the challenged actions involved an element of

2    judgment or choice." *Id*. quoting *U.S. v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267,

3    1273 (1991)(internal quotations omitted).    If the Government's actions involved an

4    element of judgment or choice, the second step is to consider "whether that judgment is

5    of the kind that the discretionary function exception was designed to shield, namely, only

6    governmental actions and decisions based on considerations of public policy." *Terbush,*

7    516 F.3d at 1129 quoting *Berkovitz v. U.S.,* 486 U.S. at 536-537, 108 S.Ct. 1954 (internal

8    quotations omitted).

9         In this case, the Ninth Circuit concluded that the "Forest Service retained

10   discretion in fighting the Bullock Fire." *Green*, 630 F.3d at 1251.  In doing so, the Ninth

11   Circuit rejected the Plaintiffs' allegation in their First Amended Complaint, that the

12   Forest Service's actions were not subject to the discretionary function exception because

13   the Forest Service failed to adhere to the requirements found in the Forest Service's

14   manual and the Coronado Forest Fire Management Plan, including the alleged failure to

15   complete a Wildland/Urban Interface Map.  *Id*. at 1250-1251.[16]

16        Since the actions taken by the Forest Service in fighting the Bullock Fire were

17   subject to the Forest Service's discretion, the Ninth Circuit proceeded to analyze whether

18   that "discretion involved the type of public policy judgment that the discretionary

19   function exception was designed to shield." *Id*. at 1251.

20        In *Miller v. United States*, the Ninth Circuit held that decisions regarding the

21   allocation of fire suppression resources are subject to the discretionary function

22   exception. *Miller v. United States*, 163 F.3d 591, 596 (9th Cir. 1988).  In its Mandate in

23   this case, the Ninth Circuit reaffirmed its prior decision in *Miller.  See Green*, 630 F.3d at

---

24   [16] The Ninth Circuit explained that the Plaintiffs' claims regarding the Wildland/Urban
25   Interface Map fail because the development of that map was only an objective with no
     certain date it was to be completed.  *Green,* 630 F.3d at 1251.  Further, since the
26   Plaintiffs notified Defendant about their properties in the days prior to the lighting of the
27   Backfire, the lack of a map informing Defendant about the Plaintiffs' properties is
     irrelevant.  *Id.*  at 1251, n.7.
28

1251.  In doing so, the Ninth Circuit rejected Plaintiffs' allegations regarding Defendant's alleged negligence in failing to use fire suppression resources to protect Plaintiffs' properties.  *See Green* 630 F.3d at 1251.

However, the Ninth Circuit found that the Plaintiffs' contention that the Forest Service's failure to notify the Plaintiffs about the backfire was not subject to the discretionary function exception.  *Id.* at 1252.   The Ninth Circuit explained that in this case, there is no evidence in the record to support the Forest Service's contention that "its decisions when and whether to communicate directly with private citizens whose properties might have been in harm's way are susceptible to policy analysis." *Id*. at 1252. The Ninth Circuit went on to explain that if the Plaintiffs had been notified of the proposed backfire, they may have been able to protect their properties or at least ensure that the Forest Service took measures to protect their properties.  *Id*. at 1252.

After reviewing the Ninth Circuit's Mandate in this case, the Court finds that the only issues remanded to this Court relate to the Defendant's failure to notify the Plaintiffs about its intention to ignite the backfire near the Plaintiffs' properties and the potential damage to their properties.[17]

Defendant argues that Plaintiffs cannot establish any reasonable connection between the Defendant's failure to notify and the Plaintiffs' damages.  *See Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 789 P.2d 1040, 1047 (Ariz. 1990)(en banc)("[i]n a cause of action for negligence, plaintiff must show some reasonable

---

[17]  In its Mandate addressing the Plaintiffs' claims that are not subject to the discretionary function exception, the Ninth Circuit expressly provided:

> In the instant case, however, the Forest Service's decisions regarding how to attack a fire and the allocation of fire suppression resources are not at issue.

> Instead, Appellants contend that the Forest Service's *failure to notify* Appellants before and after the Forest Service lit the backfire is not subject to the discretionary function exception. We agree with appellants…   (emphasis in original) *Green*, 630 F.3d at 1252(internal quotations omitted).

1    connection between defendant's act or omission and plaintiff's damages or injuries."). In

2    support of its position, Defendant argues that the Plaintiffs' properties were indefensible.

3    Thus, even if they had been notified about the proposed backfire, there was nothing that

4    they could have done to protect their properties.

5            The Defendant explains that prior to igniting the backfire, the Greens' property

6    was inspected by fire personnel and determined to be indefensible due to the existence of

7    mine shafts and excess vegetation.  The De Varona's property, although not inspected

8    until after the igniting of the backfire, was similarly indefensible due to excessive

9    vegetation.  On May 28, 2002, Toby Richard's unit log noted that the Greens' property

10   was indefensible due to the existence of mine shafts.   (Doc. 88-1).  Then, on June 4,

11   2002, Mr. Richards wrote in his unit log that he was not aware of the De Varona's

12   property and he never attempted to defend it.  (Doc. 88-1).  There was no mention of

13   excess vegetation in Mr. Richard's unit log as a basis for concluding that the Greens' or

14   the De Varona's properties were indefensible.  (Doc. 88-1).

15           However, at his deposition ten years after the Bullock Fire, Mr. Richards testified

16   that he did not attempt to defend the Greens' property due to excess vegetation as well as

17   the mine shafts.  (Doc. 88-8).  He further testified that while he was unaware of the De

18   Varona's property prior to its destruction, when he scouted the area after the fire, he

19   observed that it was so overgrown with vegetation that he was unable to drive a truck to

20   the property.  (Doc. 88-8).  As such, Mr. Richards testified that even if he had been aware

21   of the De Varona's property, he would not have attempted to defend it due to the

22   overgrown vegetation.  (Doc. 88-8).

23           The information contained in Mr. Richards' unit log, which was created

24   contemporaneously with the events described within it, differs from his testimony ten

25   years after the fact.  Moreover, Mr. Richards' testimony at his deposition is directly

26   contradicted by the Plaintiff's deposition testimony.  Plaintiff De Varona testified during

27   her deposition that while she had thick vegetation, she always pruned the vegetation on

28   the roadways to permit vehicles to pass.  (Doc. 88-6; Doc. 91-5).  She further explained

1    in her affidavit that she drove to her property with Mr. Richards on June 4, 2002 and that

2    the roadways were not covered with overgrown vegetation.  Plaintiff Green added that

3    prior to the Bullock Fire, he had removed fire-susceptible groundcover and dead

4    branches.  (Doc. 92-2).  As such, there exists a material question of fact as to whether the

5    Plaintiffs properties were indefensible due to excess vegetation as testified to by Mr.

6    Richards or whether the vegetation was not overgrown as testified to by the Plaintiffs.

7         Plaintiffs testified to a variety of steps they would have and could have taken to

8    protect their properties if they had been given prior notice of the proposed backfire.

9    Plaintiff Green testified that he knew the location of the mine shafts and thus, the mine

10   shafts would not have impeded his ability to defend his property.  He explained that if he

11   had prior notice of the proposed backfire, he would have used his well to wet the

12   structures on his property and he could have used a bulldozer to build a fire line around

13   his property.  (Doc. 94).  Plaintiff De Varona argued that she would have pooled her

14   resources with the Greens to place fire retardant on their structures and bulldozed control

15   lines around the structures.  (Doc. 91-5).  Both Plaintiffs explained that they would have

16   contacted the most senior firefighting officials to make sure they knew about their

17   properties and would have ensured that the Forest Service did everything they could to

18   defend their properties.  (Doc. 92-1; Doc. 91-5).  Plaintiffs further argued that they would

19   have attempted to call private firefighting companies to defend their properties.  (Doc.

20   92-1; Doc. 91-5).

21        Defendant contends that Plaintiffs' arguments on the actions they could have taken

22   are mere speculation and unsupported by any evidence.  The Court disagrees.  The

23   assertions of the Plaintiffs are explanations of actions they would have taken to protect

24   their properties if the Defendant provided notice of the impending backfire.  The Court

25   finds that there are genuine issues of material fact as to what extent those actions would

26   have or could have protected their properties.

27        Next, Defendant argues that since the Pima County Sheriff's Department closed

28   the roadways accessing the Plaintiffs' properties, even if Plaintiffs had received prior

notice of the proposed backfire, they could not have accessed their properties to defend them.  Plaintiffs contend that it was the Forest Service that issued the closure order prohibiting access to Mt. Lemmon.  As such, the Defendant cannot rely on the road closure as an intervening cause relieving it of liability.   Plaintiffs contend that Defendant's order closing the roadways to property in the path of a wildfire was neither unforeseeable nor extraordinary.  *See Robertson* 163 Ariz. at 546 (a superseding cause, sufficient to relieve the defendant of liability must be unforeseeable and extraordinary).

Defendant counters that the Forest Service's Closure Order exempted private property owners, thus the Forest Service did not prevent Plaintiffs from travelling to their properties. *See* (Forest Service Closure Order as Exhibit 1 to Doc. 96).   Defendant concludes that if Plaintiffs were prohibited from travelling to their property, it was the result of the Pima County Sheriff's Department's decision and not the Forest Service. However, the only evidence submitted relating to the road closures is the press release submitted by the Plaintiff and a copy of the closure order submitted by the Defendant. See (Doc. 91-2; Doc. 96).  According to those two documents, the road closures were enacted by the Forest Service.   Defendant has not submitted any evidence to support its position that the Pima County Sheriff's Department initiated its own road closures beyond those enacted by the Forest Service.

As such, a question of fact exists as to which entity initiated the Order that would have prevented Plaintiffs from accessing their properties, whether Plaintiff's could have accessed their properties, or whether the road closures by any agency at the time of the Bullock Fire would have been unforeseeable and extraordinary.  *See Robertson*, 163 Ariz. at 546.  However, regardless of whether the Plaintiffs were capable of accessing their properties, the Plaintiffs' potential actions including contacting high ranking fire personnel and private fire companies in an effort to defend their properties would not have been affected by any road closures that prevented Plaintiffs' individual access to their properties.

*V.     Conclusion*

As such, the Court finds that there are genuine issues of material fact existing in this case and Defendant is not entitled to judgment as a matter of law.  Further, after a review of the Ninth Circuit Court of Appeal's Mandate, the Court agrees with Defendant that the only remaining claims in this case are Plaintiffs' allegations that Defendant failed to warn the Plaintiffs that it intended to light a backfire near the Plaintiffs' properties and/or failed to notify Plaintiffs that the backfire exceeded its boundaries leading to the destruction of their properties.

Accordingly, IT IS ORDERED:

1.     Defendant's Motion for Summary Judgment (Doc. 86) is DENIED.

2.     Counsel shall file a Joint Proposed Pretrial Order within thirty (30) days of the date of this Order.  The content of the proposed pretrial order shall include, but not be limited to, that prescribed in the Form of Pretrial Order, which was attached to the Court's October 25, 2011 Scheduling Order.  (Doc. 42).

Dated this 26th day of June, 2013.

Cindy K. Jorgenson
United States District Judge